**COPY**

1  DAVID ADELSTEIN (SBN 105250)
   dadelstein@bushgottlieb.com
2  MARISSA NUNCIO (SBN 245082)
   mnuncio@bushgottlieb.com
3  BUSH GOTTLIEB SINGER LÓPEZ
   KOHANSKI ADELSTEIN & DICKINSON
4  A Law Corporation
   500 North Central Avenue, Suite 800
5  Glendale, California 91203-3345
   Telephone: (818) 973-3200
6  Facsimile: (818) 973-3201

7  Attorneys for MOTION PICTURE
   EDITORS GUILD, IATSE LOCAL 700

8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11  MOTION PICTURE EDITORS          CASE NO. **CV10  6050**-RSWL
    GUILD, IATSE LOCAL 700,                                    (PJWx)
12
              Plaintiff,           **PLAINTIFF MOTION PICTURE
13                                 EDITORS GUILD, IATSE LOCAL
    vs.                            700'S COMPLAINT TO COMPEL
14                                 ARBITRATION OF DEFENDANT
    CAPE FILMWORKS, LLC., a        CAPE FILMWORKS, LLC.**
15  Massachusetts Corporation,
16            Defendant.

17

18        MOTION PICTURE EDITORS GUILD, IATSE LOCAL 700 ("Local 700")

19  hereby alleges:

20        1.    This is an action to compel arbitration pursuant to a collective

21  bargaining agreement under the Labor Management Relations Act, 29 U.S.C. §141,

22  *et. seq*., and particularly under Section 301 of that Act, 29 U.S.C. §185.

23        2.    This Court has jurisdiction over this action pursuant to 29 U.S.C. §185,

24  and 28 U.S.C. §§1331 and 1337.  Plaintiff Local 700 is, and at all times herein

25  mentioned was, a labor organization representing employees of Defendant CAPE

26  FILMWORKS, LLC ("Cape Filmworks") working on the feature motion picture

27  entitled "The Lightkeepers" (the "Production").  Local 700, at all times herein

28  mentioned, has maintained offices in Los Angeles County, California and has done

226700.1  11776-19018

BUSH GOTTLIEB SINGER LÓPEZ KOHANSKI ADELSTEIN & DICKINSON
500 North Central Avenue, Suite 800
Glendale, California 91203-3345

1   business in Los Angeles County, California, and has been a California non-profit
2   corporation at all times relevant herein.

3       3.    Plaintiff Local 700 has been, at all relevant times herein, a labor
4   organization as that term is defined in Section 501(3) of the Labor Management
5   Relations Act ["LMRA"] (29 U.S.C. §142(3)) and Section 2(5) of the National
6   Labor Relations Act ["NLRA"] (29 U.S.C. §152(5)).  Local 700 is now, and at all
7   relevant times has been, affiliated with the International Alliance of Theatrical Stage
8   Employees, Moving Picture Technicians, Artists and Allied Crafts of the United
9   States and Canada, AFL-CIO, CLC ["IATSE"], which is also a labor organization
10  within the meaning of Section 501(3) of the LMRA and Section 2(5) of the NLRA.

11      4.    Plaintiff is informed and believes and thereupon alleges that Cape
12  Filmworks at all times pertinent hereto has been a Massachusetts corporation doing
13  business in Los Angeles County, California.  Specifically, the work of Defendant
14  Cape Filmworks employees that are the subject of this dispute was performed for
15  Cape Filmworks in Los Angeles County, California.  Cape Filmworks is an
16  "employer" within the meaning of Section 501(3) of the LMRA (29 U.S.C. §142(3))
17  and Section 2(2) of the NLRA (29 U.S.C. §152(2)).

18      5.    Defendant Cape Filmworks and the IATSE at all relevant times have
19  been signatory to a written collective bargaining agreement, entitled Memorandum
20  Agreement ("MA"), which sets forth terms and conditions of employment for
21  employees of Cape Filmworks working on the Production, including post-
22  production employees represented by Local 700 and the IATSE, working as editors
23  and assistant editors (the "post-production employees") for Cape Filmworks on the
24  Production.  The MA has been fully binding upon Cape Filmworks at all relevant
25  times herein.  The MA is a "contract" between Cape Filmworks and Local 700,
26  within the meaning of Section 301(a) of the Labor Management Relations Act ( 29
27  U.S.C. §185(a)).

28

BUSH GOTTLIEB SINGER LÓPEZ KOHANSKI ADELSTEIN & DICKINSON
500 North Central Avenue, Suite 800
Glendale, California 91203-3345

1    6.    Cape Filmworks violated the MA by failing to pay its editor Dean
2 Goodhill and assistant editor Rick Perkins the wages and benefits for their services
3 rendered to Cape Filmworks on the Production, as required by the MA. Cape
4 Filmworks thereby violated provisions of the MA setting forth the wages, hours and
5 terms and conditions of employment for these post-production employees. A true
6 and correct copy of the MA is attached hereto as Exhibit A.

7    7.    Article 14 of the MA incorporates by reference the provisions of the
8 Producer-IATSE Basic Agreement of 2006 and its successor agreements ["Basic
9 Agreement"] to the extent not inconsistent with the terms of the MA. The Basic
10 Agreement defines Local 700 as a "Local Union" subject to the Basic Agreement,
11 and in Article IV incorporates by reference provisions of the collective bargaining
12 agreement between Local 700 and the Producers. Pursuant to Article XXXII of the
13 Basic Agreement (a true and correct copy of which is attached as Exhibit B),
14 employers subject to the Basic Agreement, including Cape Filmworks through the
15 MA, agreed to submit to final and binding arbitration any dispute between a Local
16 Union, including Local 700, and itself with regard to wage scales, hours of
17 employment or working conditions or with regard to the interpretation of the Basic
18 Agreement and the MA.

19    8.    On or around October 23, 2009, Local 700 filed a written grievance
20 with Cape Filmworks, alleging that Cape Filmworks had violated the Basic
21 Agreement and MA by the conduct referred to above. (A true and correct copy of
22 the grievance is attached hereto as Exhibit C.) Cape Filmworks has denied the
23 grievance. On November 23, 2009, Local 700 filed a written demand on Cape
24 Filmworks to arbitrate the grievance. Cape Filmworks has refused, in bad faith and
25 without any justification, to arbitrate the Local 700 grievance by ignoring Plaintiff's
26 demand to arbitrate.

27 / / /

28 / / /

226700.1 11776-19018

3

PLAINTIFF IATSE LOCAL 700'S COMPLAINT TO COMPEL ARBITRATION OF DEFENDANT CAPE FILMWORKS, LLC.

BUSH GOTTLIEB SINGER LÓPEZ KOHANSKI ADELSTEIN & DICKINSON
500 North Central Avenue, Suite 800
Glendale, California 91203-3345

1     WHEREFORE, Plaintiff Local 700 prays that:

2     1.    The Court issue an Order declaring that Defendant Cape Filmworks

3  shall be required to arbitrate the Local 700 Grievance in accordance with the MA

4  and Basic Agreement;

5     2.    The Court award Plaintiff Local 700 its costs and reasonable attorneys'

6  fees; and,

7     3.    The Court award such other and further relief as the Court deems

8  appropriate.

9  DATED: August 13, 2010      DAVID ADELSTEIN

10                   MARISSA NUNCIO
                        BUSH GOTTLIEB SINGER LÓPEZ

11                   KOHANSKI ADELSTEIN & DICKINSON
                        A Law Corporation

12

13

14                   By:

15                     DAVID ADELSTEIN

16                   Attorneys for MOTION PICTURE EDITORS
                     GUILD, IATSE LOCAL 700

17

18

19

20

21

22

23

24

25

26

27

28

BUSH GOTTLIEB SINGER LÓPEZ KOHANSKI ADELSTEIN & DICKINSON
500 North Central Avenue, Suite 800
Glendale, California 91203-3345



**APPENDIX E**

SINGLE PRODUCTION SIGNATORY
LOW BUDGET FEATURE LENGTH
MOTION PICTURE

## "THE LIGHTKEEPERS" / CAPE FILMWORKS, LLC
### MEMORANDUM AGREEMENT

This Agreement is made and entered into by and between **CAPE FILMWORKS, LLC**
("Producer") and the INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYES,
MOVING PICTURE TECHNICIANS, ARTISTS AND ALLIED CRAFTS OF THE UNITED
STATES, ITS TERRITORIES AND CANADA ("IATSE") as of April 3, 2009:

1) Producer is engaged in the production of an extremely low-budget feature length motion
picture [1] entitled **"THE LIGHTKEEPERS"** ("Film") shooting in MASSACHUSETTS. In
connection with the production of the Film, Producer has employed a number of motion
picture production technicians and artisans. The IATSE has established that it is the
bargaining representative for the Film only of the technicians and artisans in a unit
appropriate for the purposes of collective bargaining.

2) The Producer recognizes the IATSE as the exclusive collective bargaining representative and
agrees to be deemed part of the multi-Producer bargaining unit established by the Producer-
IATSE Basic Agreement of 2006 and its successor agreements ("Basic Agreement") for the
purposes hereafter noted for this Production only. In the event this Production goes on distant
location or the production changes location, the Producer agrees to recognize the IATSE as
the exclusive bargaining representative of all persons other than those covered by the
Producer-IATSE Basic Agreement (as amended if applicable) to perform work on the
Production in the crafts and classifications traditionally represented by the IATSE. The
Producer shall notify the IATSE of the need to hire persons to perform such work.

3) Producer shall inform all current and prospective covered employees of the terms and
conditions applicable to the Film and shall provide each Employee with a copy of this
Agreement, with an acknowledgment of receipt. Prospective covered employees are free to
accept or refuse a call to work on this Film and any refusal to accept a call shall not count as a
refusal under the roster removal provisions of paragraph 68(c) of the applicable West Coast
Studio Local Agreements. Failure to provide any covered employee with a copy of this
Agreement shall nullify the special conditions of this Agreement as to that employee and
Producer shall be bound by all the terms and conditions of the Basic Agreement and the
applicable West Coast Studio Local Agreements as to that employee on all work performed
on the Film.

4) The following Industry Seniority Roster (Roster) requirements under the Basic Agreement
shall apply:

---

[1] This Agreement is not applicable to motion pictures intended for initial television exhibition.

1

a) A person who has been engaged by the Producer for the Film may continue to be employed in the Film without regard to whether or not the person is listed on the Roster in the classifications in which they are employed. The employed persons are limited to persons designated by the Producer to the IATSE at the time of signing of this Agreement.

b) The persons who would otherwise qualify for Roster status under the Basic Agreement who perform bargaining unit work in connection with the production of the Film shall be deemed to have performed their services on the Film from their date of hire within the multi-employer bargaining unit defined in the Basic Agreement and that such experience shall be deemed qualified employment for purposes of Roster placement eligibility; and

c) This provision shall not qualify a person for Roster status or supersede any provisions of the Basic Agreement on hiring and employment except as specifically set forth in this paragraph.

5) The Producer shall advise the Union prior to the execution of this agreement whether it will use a payroll company and if so, what company it will use. If the payroll company is acceptable to the Union, the payroll company must be used throughout the production and post-production period. The producer shall cause the payroll company to certify to the Union that it has on deposit enough funds to cover payrolls and benefit contributions for at least two weeks of principal photography and such funds are to be used exclusively for such purposes.

If the payroll company is not acceptable to the Union or no payroll company is used, the following shall be applicable: Simultaneously with execution of this agreement, the producer shall deposit with the Union the sum of $300,000.00 representing two weeks of estimated gross payroll and benefits for all employees covered hereunder. Said amount shall be held as and for a security deposit in case of default by producer. It shall be held in a separate segregated non-interest bearing account. At the end of principal photography one half of such amount shall be returned to the producer if no default has taken place. The remaining balance shall be returned to the producer two weeks after the end of post-production. In lieu of any cash deposits required hereunder, the producer may supply the Union with an irrevocable letter of credit from any federally insured bank, in a form acceptable to the Union. The breach of any of the terms of this Article shall constitute a material breach of the contract and shall entitle the Union to equitable relief in addition to any remedies it might have at law.

6) Producer represents that the "total production costs" of the Film are [check the applicable category]:

☒ between one million, five hundred thousand dollars ($1,500,000) and four million, two hundred thirty thousand dollars ($4,230,000);

☐ more than four million, two hundred thirty thousand dollars ($4,230,000) but no more than seven million, two hundred twenty thousand dollars ($7,220,000);

☐ more than seven million, two hundred twenty thousand dollars ($7,220,000) but no more than ten million, two hundred nine thousand dollars and ($10,209,000).

2

"Total production costs" is defined as all costs of pre-production, production, and post-production, both above-the-line and below-the-line, whether incurred directly or through another person or entity, and includes all deferred fixed compensation. The cost of the premium for a completion bond and for a contingency fund, collectively, shall not exceed ten percent (10%) of the budget, and shall not be included as part of the production costs.

a) Prior to the commencement of pre-production work on a motion picture as defined above and covered by this Agreement, the Producer shall submit to the IATSE or the IATSE at its election may inspect at the Producer's offices a copy of the budget, crew list when available, and titles of production, location, projected start and completion dates, and the Producer shall disclose in writing the identity of any distributors and their markets and territories and the location and projected start and completion dates of photography. Representatives of the IATSE or retained professionals shall have the right to review the budget and the above-specified information and make inquiries to the Producer concerning the budget. Producer agrees to cooperate and provide all additional information to the extent it can reasonably accommodate such request. All information received or reviewed by representatives of the IATSE or retained professionals shall be confidential and neither the IATSE nor its representatives or retained professionals shall disclose any such information except as necessary to enforce their rights under this Agreement.

b) The Union shall have the right at any time, whether during pre-production, production, post-production, or after exhibition, to inspect at the Producer's offices all records, documents, and information relating to the budget and the actual costs of production, including the right to use retained professionals. The Union shall have the right to inspect budget records as set forth above and to assert a grievance and proceed to arbitration on the enforcement and implementation of the provisions of this Article within twelve (12) months following the release of a covered film. Producer shall provide the IATSE, upon request with a report of the actual expenditures of the Production (Final Expenditure Report) and such other relevant materials as the IATSE may require which show the actual cost of the Production. Provided that such overages are not caused solely by an act of God, fire, earthquake or governmental action, in the event that the total production costs of the Film have exceeded [check the applicable category]:

☒ (i) four million, two hundred thirty thousand dollars ($4,230,000) with an allowance of five percent (5%) variance only of the original budgeted total production costs (excluding the cost of the completion bond of not more than 10% of the budget) and costs reimbursed by insurance, then the employees employed on the Film shall be paid retroactively for all hours worked or guaranteed at the wage rates applicable to motion pictures with budgets between seven million, two hundred twenty thousand and ten million, two hundred nine thousand ($7,220,000 – $10,209000) set forth on Attachment "A" and have benefit contribution rates retroactively adjusted to reflect the applicable wage rate as scale rate;

☐ (ii) seven million, two hundred twenty thousand dollars ($7,220,000) with an allowance of five percent (5%) variance only of the original budgeted total production costs (excluding the cost of the completion bond of not more than 10% of the budget) and costs reimbursed by insurance, then the employees employed on the Film shall be paid retroactively for all hours worked or guaranteed at the wage rates applicable to motion pictures produced pursuant to the Basic Agreement and West Coast Studio Local Agreements and have benefit

3

contribution rates retroactively adjusted to reflect the applicable wage rate as scale rate;

□ {iii} ten million, two hundred nine thousand dollars ($10,209,000) with an allowance of five percent (5%) variance only of the original budgeted total production costs (excluding the cost of the completion bond or nor more than 10 % of the budget) and costs reimbursed by insurance, then the employees employed on the Film shall be paid retroactively for all hours worked or guaranteed at the wage rates applicable to motion pictures produced pursuant to the Basic Agreement and West Coast Studio Local Agreements plus an additional ten percent (10%) of those wages and have benefit contribution rates retroactively adjusted to reflect the applicable wage rate as scale rate. The Employer is also required to make retroactive Holiday and Vacation payments referred to in paragraph 8(b) and 8(c) below as defined in the Basic Agreement.

c) All information received or reviewed by representatives of the IATSE or professionals retained by the IATSE pursuant to this provision shall be kept confidential and neither the IATSE nor its representatives or retained professionals shall disclose any such information.

Should the "total" production costs" of the film exceed seven million, two hundred twenty thousand dollars ($7,220,000) or ten million, two hundred nine thousand dollars ($10,209,000) in accordance with Paragraphs 6(b) {ii} or {iii}, supra, the additional payments required by the applicable sub-paragraph shall be paid by the Producer.

d) In the event of an IATSE audit and/or litigation, the Producer shall be liable for audit fees and/or attorney's fees upon an auditor's findings that the "total production costs" exceeded the amount represented by the Producer as required by Paragraph 6 of this Memorandum.

7) Producer shall not sell, transfer, assign, or otherwise dispose of any rights comprising the Picture, including, without limitation, (1) copyrights or copyrightable interests relating to the Picture or the underlying literary material upon which it is based, (2) rights to distribute, exhibit, or exploit the Picture, and (3) the right to produce the Picture (including, without limitation, post-production), without first obtaining and delivering to the IATSE, a written Agreement from any transferee, assignee or recipient of any or all such rights ("Transferee") wherein Transferee assumes or guarantees all obligations under this Agreement.

8) Effective as of each covered employee's initial date of hire, the following terms and conditions will apply to this production only.

a) Producer shall make contributions and payments to the Motion Picture Industry Pension and Health Plans, including Individual Account Plan contributions and Contract Services Administration Trust Fund contributions, in the amounts due and the manner set forth as provided for in the Basic Agreement (including but not limited to Articles XII, XIII, XIIIA, XIV, XIX, XXV, XXVIII and XXXIV(d)). **Such contributions shall be made commencing as of each employee's original date of hire by the Producer on the motion picture.** If the benefit contributions due as of the date of this Agreement are made within thirty (30) calendar days following the execution of this Agreement, then

4

there shall be no liquidated damages, interest or other charges attached to the contributions.

b) Producer will not be required to pay the percentage of salaries for holidays as defined in the BA, however, any employee working on a holiday will be paid double time.

c) Producer will not be required to pay the percentage of salaries as vacation pay as defined in the BA.

d) Assistance/Interchange: Where the grip, property and electric departments have been staffed by a department head, assistant and a journeyperson, such employees and other employees working in such departments may assist each other in the performance of their respective duties.

e) Work Day, Week and Minimum Calls: The workweek shall be any five or six consecutive workdays within seven consecutive days. The minimum daily work call during pre-production and production shall be eight (8) hours excluding meals. The minimum call on a prep day involving only a production meeting and on a wrap only day shall be four (4) hours, but if the four (4) hours are exceeded, the minimum shall be eight (8) hours excluding meals. The minimum calls on a travel only day shall be four (4) hours and a maximum shall be eight (8) hours paid as a straight time allowance.

f) Overtime: The first eight (8) work hours during the first five (5) days of a work week shall be at straight time. Work hours in excess of eight (8) hours on the first five (5) days of the week and on a sixth work day shall be paid at time and one-half. Double time shall be paid after fourteen (14) elapsed hours on the first six (6) days of the work week and for all hours worked on a seventh day in a work week or on a holiday. All time is to be computed in one-tenth (1/10) hourly units and overtime premiums shall not be compounded. Daily overtime for Script Supervisors shall be paid as provided in the Local 871 Agreement (i.e.: time and one-half after six (6) elapsed hours). Overtime pay for weekly employees shall be paid on one-fortieth (1/40) of the weekly rate.

g) Rest Periods:

(1) There shall be a ten (10) hours rest period both on- and off-production employees. If at least seven (7) hours of rest are provided, the penalty for the invaded hours, or portion thereof, shall be paid at additional straight time. If less than seven (7) hours of rest have been provided, then the employee shall be called back and paid at the rate in effect at time dismissal plus additional straight time until a ten (10) hour rest period has been provided.

(2) On weekends (end of the scheduled weekly shift) on a six (6) day shift, there shall be a thirty two (32) hour rest period for both on and off production employees and fifty two (52) hours on a five (5) day shift. The penalty for the invaded hours or portion thereof shall be paid at an additional straight time.

h) Meals:

(1) Meal periods shall not be less than one-half (½) hour nor more than one (1) hour in length. Not more than one meal period shall be deduced from work time for

5

an employee during the minimum call. A second meal period may be deducted from work time for those employees who work in excess of the minimum call.

(2) The employee's first meal period should commence within six (6) hours following the time of first call for the day; succeeding meal periods shall commence within six (6) hours after the end of the preceding meal period. An employee's first meal period shall commence no earlier than three (3) hours after such employee reports for work except for persons called in earlier than the regular crew call who are provided with a non-deductible breakfast in which case their first deductible meal period will be due at the same time as the meal is due for the regular crew.

(3) The first deductible meal period may be extended by fifteen (15) minutes to complete a set up and a second deductible meal period may be extended by thirty (30) minutes to complete a set up and/or wrap. Extensions of the meal period are not to be scheduled and if exceeded, meal penalties shall relate back to the time the meal was otherwise due.

(4) A meal penalty allowance for delayed meals shall be computed as follows:

| | |
|---|---|
| (i) First ½ hour meal delay or fraction thereof | $7.50 |
| (ii) Second one-half hour meal delay or fraction thereof | $10.00 |
| (iii) Third and each succeeding one-half meal delay or fraction thereof | $12.50 |

Such allowance shall be in addition to the compensation for work time during the delay and shall not be applied as part of any guarantee.

i) The terms and conditions of the BA applicable to Distant Location Provisions shall be in effect for all Employees hired and transported to Distant Location under this Agreement. Per Diem allowance shall be as follows: Breakfast: $9.00 Lunch: $14.00 Dinner: $27.00. Any meals provided by the Producer may be deducted from the per diem at the above stated rates.

j) Cancellation of Calls: In the event of cancellation for previously called employees, if notification is not given by the completion of the previous day's work, then the employee shall be paid an eight (8) hour minimum call unless the canceled call was for travel only or wrap, in which case the employee shall be paid a four (4) hour minimum call.

k) Producer will not be required to pay any transportation allowance, such as that specified in Paragraph 23 of the West Coast Studio Local Agreements (commonly called "drive-to monies").

9) Wage Rates: The applicable minimum wage rates for positions covered by this Agreement are set forth on Appendix A (attached) for motion pictures with budgets [check the appropriate category]:

6

☑ between one million, five hundred thousand dollars ($1,500,000) and four million, two hundred thirty thousand dollars ($4,230,000);

☐ more than four million, two hundred thirty thousand dollars ($4,230,000) but no more than seven million, two hundred twenty thousand dollars ($7,220,000);

☐ more than seven million, two hundred twenty thousand dollars ($7,220,000) but no more than ten million, two hundred nine thousand dollars and ($10,209,000);

and shall be effective as of each employees initial date of hire. There are no guarantees of employment beyond one day for daily employees and one week for weekly employees. If the last work week of a weekly employee is a partial work week, it may be prorated if the employee has been employed for at least two full weeks. All rates valid until December 31, 2009.

10) Minimum Terms and Conditions: The wages, hours and working conditions of this Agreement shall be minimums only and employees shall not be precluded from obtaining "better conditions" as that term is understood in the motion picture industry. Any employee enjoying such better conditions shall not have their wages, hours or working conditions reduced as a consequence of this Agreement.

11) Production Accountants and Assistant Production Accountants under Local 871's jurisdiction shall be subject to the wages, hours and terms and conditions of this Agreement.

12) Bereavement Leave: In the event of the death of a parent, sibling, grandparent, spouse, or child of an eligible employee, such employee shall be allowed up to three paid days off and his/her job shall be available upon return from bereavement leave. Employees who work fifty percent (50%) or more of the total work days of their department shall be deemed eligible for bereavement leave pay. Payment for Bereavement leave may be deferred until the Producer can determine the employee's eligibility. Bereavement pay shall be calculated on the same basis as unworked holidays.

13) Voluntary Political Contributions: The Producer agrees to deduct from each employee's gross wages at each payroll period such voluntary contributions to the IATSE Political Action Committee ("IATSE PAC") as the employee has authorized in writing to be deducted. The Producer will issue a single check for all employee's deductions payable to the IATSE PAC and remit same directly to the IATSE PAC within 10 calendar days of the deduction. Along with the check the Producer will provide the PAC with the following information: (1) the name of each employee for whom a deduction has been made, (2) the employee's social security number, and (3) the amount of the deduction. The Producer agrees to bear the costs of payroll deduction for the IATSE PAC. The Union will indemnify and hold harmless the Producer from any and all liability arising from deductions provided for in this section.

14) Except as specifically set forth in this Agreement, the terms and conditions of the BA shall be applicable to the Film covered by this Agreement.

7

15) Producer shall execute any additional documents reasonably required to effectuate the agreements above noted.

INTERNATIONAL ALLIANCE OF
THEATRICAL STAGE EMPLOYES,
MOVING PICTURE TECHNICIANS,
ARTISTS AND ALLIED CRAFTS OF THE
UNITED STATES, ITS TERRITORIES AND
CANADA

By: _____
International Representatives
DANIEL MAHONEY
Assistant Division Director of
Date: Motion Picture & Television Production
4-24-09

CAPE FILMWORKS, LLC

By: _P. L. · FOSTER_
(Print Name)
Signature: _____
Title: Producer
Address: _____
City/State/Zip: **Cape Filmworks, LLC**
**"The Lightkeepers"**
Tele: **407 North Street, 2nd Floor**
**Hyannis, MA  02601**
**(508) 815-4534**
**(508) 815-4538 Fax**

8

## 2009 Low Budget Basic Agreement Wage Scales $1.500-4.230 Million (Tier I)

| Classification | Hourly Wages |
| --- | --- |
| Director of Photography | STN |
| Camera Operator | $40.09 |
| Digital Imaging Technician | $40.09 |
| 1st Asst. Camera | $34.78 |
| 2nd Asst. Camera | $26.66 |
| Still Photographer | $40.09 |
| Film Loader | $22.78 |
| Camera Utility | $27.79 |
| Digital Utility | $23.99 |
| Key Grip | $27.79 |
| Best Boy Grip | $25.12 |
| Company Grip | $24.71 |
| Dolly Grip | $26.59 |
| Chief Lighting Technician | $27.79 |
| Best Boy Electric | $25.12 |
| Lighting Technician | $24.71 |
| Rigger Gaffer | $26.07 |
| Art Director (weekly - on call) | $2,183.96 |
| Lead Person | $23.91 |
| Swing Gang | $22.91 |
| Production Painter | $30.54 |
| Set Painter | $26.57 |
| Set Designer | $29.54 |
| Scenic Artist | STN |
| Construction Coordinator | STN |
| Propmaker Foreman | $28.17 |
| Propmaker | $24.54 |
| Special Effects Foreman | STN |
| Asst. Special Effects | STN |
| Set Decorator | STN |
| Prop Master | $27.79 |
| Asst. Prop Master | $24.54 |

| Classification | Hourly Wages |
| --- | --- |
| Key Greens | $25.12 |
| Costume Designer | STN |
| Key Costumer | $27.79 |
| First Set Costumer | $25.12 |
| Costumer | $23.99 |
| Key Makeup Artist | $31.94 |
| Asst. Makeup Artist | $27.16 |
| Key Hair Stylist | $27.79 |
| Asst. Hair Stylist | $24.71 |
| Sound Mixer | $44.76 |
| Boom Operator | $29.14 |
| Utility Sound Technician | $28.89 |
| Video Assist (record) | $27.79 |
| Script Supervisor | $28.01 |
| First Aid / Medic | $25.12 |
| Craft Services | $25.12 |
| Craft Utility | $23.99 |
| Editor (weekly - on call) | $2,547.20 |
| **Sound Editors | $1,907.27 |
| **Music Editors | $1,907.27 |
| Asst. Editor (45 hr/wk) | $1,537.89 |
| Apprentice Editor (40hr/wk) | $799.83 |
| *POC | $1,205.89 |
| *APOC | $829.44 |
| *Art Dept. Coordinator | $953.26 |
| *Production Accountant | STN |
| *Asst. Production Accountant | $1,142.85 |
| Marine Dept. | STN |
| All Others | STN |
| | |
| | |
| | |

All Rates Valid Until 12/31/09
All "STN" Rates Shall be Greater than "Key" Rates
("All Others" Designation Exempt)
* Rates are based on 56 hours per week
  Benefit Gurantee are paid at 60 hours per 5-day week
** Rates are for 48.6 hours per week

REVISED: 10/30/2008

(f)     A separate bulletin shall be issued by the AMPTP to provide the following:

(1)     The Producers reaffirm their commitment to regularly inspect the studio working areas and to establish preventive maintenance procedures to assure safe working conditions.

(2)     Complaints of unsafe conditions will be promptly investigated by the Producer and appropriate action will be taken if the Producer finds that an unsafe condition does exist.

(3)     Each Producer will designate an individual as the responsible safety officer for its respective studio, facility, laboratory or location site. Except on location, each safety officer will have a well-publicized "hot-line" phone number which employees can anonymously call to alert management to any existing safety problems which may require correction.

(4)     The Producers will provide access to all working areas to the Safety Director of CSATF so that he will periodically inspect same.

(5)     Communication regarding safety policy will be made available to all affected employees directly or by posting on bulletin boards.

(g) .   Concerns stemming from the use of smoke on sets shall be referred to the industry-wide Safety Committee for resolution.

**XXXIA.     Safety Training**

Effective December 1, 2002, a four (4) hour minimum call shall apply for any day on which an employee, at the request of an individual Producer, reports for safety training.

**XXXII.     Grievance and Arbitration Procedure**

The grievance and arbitration procedure provisions in Agreements now in effect between the Producers, on the one hand, and the IATSE and its respective West Coast Studio Locals, on the other hand, shall be amended in their entirety as set forth below, effective August 1, 2003:

- 84 -

In the event of any dispute between the Local Union or any of the persons subject to this Agreement and the Producer with regard to wage scales, hours of employment or working conditions or with regard to the interpretation of this Agreement concerning such provisions, the procedure, unless otherwise specifically provided herein, shall be as follows:

Step One - The aggrieved party shall mail or deliver to the other party a written notice of the claim and concurrently furnish a copy of such notice to the International Representative of the IATSE and Contract Services Administration Trust Fund. Such written notice shall contain the specific contract sections which are alleged to have been violated, the dates(s) or approximate date(s) of the alleged violation(s), the facts on which the grievance is based, the name of the production (if any), the remedy sought and the names of the individuals aggrieved, when known, except for group claims for which the classifications of the individuals aggrieved, when known, shall be listed.

A claim by the Local Union that the confirmation regarding guarantees of employment set forth in Paragraph 6 of the West Coast Studio Local Agreements has been violated by a Producer may be filed only upon the written approval of the West Coast Office of the International Union. Such written approval shall accompany the claim.

The party which has received the grievance shall, within fifteen (15) working days after the grievance has been received, respond in writing to the aggrieved party, setting forth the reasons, if any, for the action(s) taken by it, which action(s) gave rise to the grievance. Copies of such written response shall also be furnished to the same parties served with the grievance. The representative of the Local Union and the designated representative of Producer shall immediately discuss the matter and the grievance shall be settled if at all possible. The decision, if any, of such representatives shall be final and binding upon the parties and any employees concerned.

If the party receiving the grievance fails to serve the written response as required by Step One, then the other party may elect to proceed directly to arbitration or to Step 2 by serving a written demand upon the other party within five (5) working days after the written response was due.

## Conciliation Committee

Step Two - If, within ten (10) working days after the response has been served, the parties fail to meet, or if the grievance is not settled, then the aggrieved party may proceed to Step Two, by delivering or mailing, within five working days

- 85 -

thereafter, a written demand, which shall include a statement of the particulars of the claim, upon the other party and upon the International Representative of the IATSE and CSATF. If neither party requests a Step Two conciliation meeting, then the aggrieved party may proceed directly to Step Three regarding expedited or regular arbitration, by serving a written demand upon the other party within the time periods set forth above. Failure of the aggrieved party to so serve such demand for a Step Two conciliation meeting or an arbitration shall constitute a waiver of the claim, unless the parties mutually stipulate otherwise in Step One.

If a demand for Step 2 is so served, the grievance shall be brought before the Conciliation Committee as soon as practicable, but not later than twenty (20) working days following the receipt of such notice. The Conciliation Committee shall consist of an International Representative of the IATSE and a representative of CSATF. In a grievance involving an employer engaged exclusively in the operation of film processing laboratories (including Metro-Goldwyn-Mayer Laboratory) and Film/Video Technicians, Local 683, the provisions of the Step Two conciliation meeting shall be as set forth in the Local 683 Agreement.

The parties to the grievance shall be present and shall be responsible for the presentation of their own position at such time and place. If the aggrieved party fails to appear, then the grievance shall be considered as waived. If the responding party fails to appear, then the aggrieved party shall be entitled to proceed with the presentation of its position, and the Conciliation Committee, upon presentation of evidence showing a contract violation, shall have the authority to and shall issue an immediate final and binding award in favor of the aggrieved party, including an appropriate remedy.

If either party intends to appear, but does not intend to present any facts or arguments as to a defense or as to the claim, then such party shall so notify the other party as to such intention at least three (3) days prior to the conciliation meeting. In any event, either party may, at least three (3) days prior to the date of the Conciliation Committee meeting, cancel such Conciliation Committee meeting and the aggrieved party may proceed directly to arbitration under Step Three.

The AMPTP and the IATSE shall adopt written rules and procedures which shall be designed to foster to the maximum extent possible the exploratory and conciliatory nature of Step Two of this procedure.

The Conciliation Committee shall, at the beginning of the meeting, assist the parties in a good faith attempt to resolve the dispute. In the event the parties, identified as the Producer and the Union, are able to resolve the grievance with the assistance of the Conciliation Committee, the Conciliation Committee shall reduce

the resolution of the grievance to writing as a binding determination on all parties. Such a determination shall be signed by the parties.

If the dispute is not resolved as provided above, then both parties at that time must declare whether they will be bound by a decision of the Conciliation Committee. If both parties agree to be bound, then the Conciliation Committee shall hear the evidence and arguments of the parties and shall render a decision, which may include a "no decision" award, which shall be final and binding on all the parties, including any individual grievant. Disputes involving jurisdiction or technological changes shall be specifically excluded from the jurisdiction of the Conciliation Committee.

The Conciliation Committee shall have the right, upon written request of either party, to refer the dispute back to the parties, without prejudice to the merits and without expanding the time limits for the filing of a grievance or a response, if the Conciliation Committee is of the opinion that either the written grievance or response does not meet the requirements set forth in Step One.

Step Three - If the parties do not agree that the Conciliation Committee's recommendation will be final and binding on them or if the parties fail to resolve the grievance, or if the Conciliation Committee has issued a "no decision" award, then the parties may proceed to expedited arbitration or regular arbitration as provided below:

(a) Expedited Arbitration - The aggrieved party may elect to proceed to expedited arbitration within ten (10) working days following the Step Two meeting, or within ten (10) working days following the cancellation of the Step Two meeting, but only in cases wherein the claim arises under Paragraph 68 involving disputes relating to the failure to follow studio seniority or industry seniority, and disputes arising under Paragraph 68 covering the discharge or discipline for cause of an employee subject to Paragraph 68 of the applicable West Coast Studio Local Agreements, or in cases wherein the claim for wage payments, adjustments and/or damages consistent with the contract does not exceed fifteen thousand dollars ($15,000). The aggrieved party may likewise proceed to expedited arbitration following Step Two over disputes with regard to only "WAGE SCALES, HOURS OF EMPLOYMENT, AND WORKING CONDITIONS" provision of the Agreement subject to this Article and provided the claim for damages does not exceed fifteen thousand dollars ($15,000). Any other case may be submitted to expedited arbitration only by the mutual agreement of the parties.

- 87 -

In an arbitration involving an employer engaged exclusively in the operation of film processing laboratories and Film/Video Technicians Local #683, the expedited arbitration procedure under Step Three will be as set forth in the Local #683 Agreement.

Disputes involving jurisdiction or technological changes shall be specifically excluded from the jurisdiction of expedited arbitration.

Except as time limits are set forth in Paragraph 68, cases that are submitted to expedited arbitration shall be heard within ten (10) working days after the other party received the demand for expedited arbitration or within ten (10) working days after the other party gives notice of its agreement to proceed to expedited arbitration in cases where the mutual agreement of the parties is required.

The Alliance of Motion Picture & Television Producers and the IATSE shall revise the list of arbitrators assigned to hear expedited arbitrations. The list shall consist of four (4) arbitrators and two (2) alternates with recognized experience as professional labor arbitrators.

During the term of this Agreement, the parties may mutually add the names of additional persons to the panel of neutral arbitrators to either supplement the panel or replace persons no longer available to serve.

From the panel of names of the neutral arbitrators set forth above, the arbitrators shall be assigned, depending upon their availability, in rotation, to the cases as they arise. The parties may, by mutual consent, select an arbitrator out of rotation provided that notice of their selection is given to CSATF prior to the appointment of the arbitrator next in rotation.

The expedited arbitration hearing shall be presided over by a neutral arbitrator assigned from the panel of neutral arbitrators. The IATSE and CSATF shall schedule the grievances to be heard in order of receipt. The grievances must be heard by the assigned arbitrator unless that individual becomes unavailable, in which instance the next arbitrator in the rotation shall hear the grievance. If either party intends to be represented by outside counsel at the expedited arbitration hearing, then such party must notify the opposing party within two (2) working days after the hearing date for the expedited arbitration has been determined. The parties, who may be represented by outside counsel, will not file post-hearing briefs, but may, prior to or during the hearing, present a written statement of the facts. If either party so desires, a stenographic record may be made and that party shall pay for the transcript. In such cases, the transcript shall

- 88 -

be solely for the use of the party requesting it and shall not be used to delay a decision in the matter. The two preceding sentences shall not apply to roster placement nor roster removal arbitrations, for which no stenographic record shall be made. The neutral arbitrator shall have sole authority to rule on all motions and decide the case.

The writing of an opinion will be at the discretion of the neutral arbitrator. The decision of the arbitrator, which shall be issued orally and confirmed in writing if requested by either party at the conclusion of the hearing, or in writing within three (3) days from the conclusion of the hearing (the choice being at the sole discretion of the arbitrator) shall be final and binding upon the parties and any employees concerned. The neutral arbitrator shall have the power to determine only the specific grievance or dispute and, when appropriate, award wage adjustments or damages consistent with the contract, in an amount not to exceed fifteen thousand dollars ($15,000), but shall not have the power to amend, modify or effect a change in any of the provisions of this Agreement, nor to determine jurisdictional or technological change disputes. The decision of the neutral arbitrator shall be non-precedential and his decision and/or opinion, if any, shall not be offered or admitted into evidence in any other proceeding other than: (1) a judicial action seeking confirmation, correction or vacation of said decision; or (2) a grievance or arbitration proceeding involving the same Producer and Local Union.

Fees and expenses of the arbitrator shall be borne equally by the parties to the dispute. All other costs shall be borne by the party incurring the same.

The bills of the arbitrator, together with a completed information form, shall be sent by the arbitrator to the IATSE and the Producer involved in the expedited arbitration with copies to CSATF. The information form shall be jointly prepared by the IATSE and CSATF.

The neutral arbitrator shall proceed to hear a dispute properly before him under this provision of expedited arbitration, notwithstanding the fact that a similar case may be pending in a regular arbitration.

(b)     Regular Arbitration - The aggrieved party may elect to proceed to regular arbitration within ten (10) working days following the Step Two meeting or within ten (10) working days following the cancellation of the Step Two meeting.

- 89 -

The IATSE and the Producers agree to establish a panel of individuals with recognized experience as professional labor arbitrators as members of a standing panel of neutral arbitrators. The panel shall comprise an odd number of arbitrators.

If demand is served for regular arbitration, then the parties shall select a sole arbitrator to hear and determine the grievance by mutual agreement. If the parties cannot agree to the arbitrator to be appointed, then each party shall have the right to alternately strike an arbitrator's name from the panel until such time as one arbitrator is left and the remaining arbitrator shall be selected and appointed as the arbitrator in the proceedings.

The parties shall select the arbitrator within five (5) working days after the demand for regular arbitration has been served. The parties may, by mutual agreement, select the arbitrator outside of the panel of neutral arbitrators or utilize the list of arbitrators obtained from the Federal Mediation and Conciliation Service.

Such hearing shall be held within fourteen (14) days after the arbitrator is selected, at such time and place as the arbitrator shall determine. If the arbitrator so selected is unable or unwilling to undertake the arbitration within the time limit herein provided, another arbitrator shall be selected from such list. The decision of the arbitrator shall be rendered in writing, stating his reasons for the award, within thirty (30) days after the submission of the grievance for decision. The arbitrator's decision shall be final and binding upon the parties thereto and upon any employees concerned. The arbitrator shall have the power to determine the specific grievance or dispute, but shall not have the power to amend, modify or effect a change in any of the provisions of the Agreement, nor to determine jurisdictional disputes.

Fees and expenses of the arbitrator and cost of a court reporter and original transcript, when jointly requested, shall be borne equally by the parties to the dispute; otherwise, the party making such request shall pay for it. All other costs shall be borne by the party incurring same.

(c)    Claims - Any claims for the payment of wages or severance pay, not presented under Step One within three hundred sixty-five (365) consecutive days after the employee is entitled to such wages or severance pay, shall be deemed to be waived. Any dispute as to the correct amount of payment of holiday or vacation pay, not presented under Step One within three hundred sixty-five (365) consecutive days after March 15 of the calendar year next following the

- 90 -

Exhibit B, Page 20

calendar year in which such holiday or vacation pay, as the case may be, was earned, shall be deemed to be waived.

Any other claim or grievance not presented under Step One, within (i) sixty (60) calendar days after the occurrence of the subject matter of the grievance or (ii) within sixty (60) calendar days after the employee or the Union has had a reasonable opportunity to become aware of the occurrence, whichever of (i) or (ii) is the later (but in any event not to exceed three hundred sixty-five (365) calendar days after the occurrence), shall be deemed to be waived. Time on distant location shall not be included in this period.

For the purpose of this Article, "aggrieved party" shall mean the Producer or the Union acting on its own behalf or on the behalf of an employee covered by this Agreement.

(d)     In General - The time periods provided for herein may be extended by mutual written consent of the parties.

(e)     Scheduling - In scheduling any grievance in Step Two or Step Three, preference shall be given to any grievance involving the discharge of an employee or a grievance involving the Industry Experience Roster.

(f)     Disciplinary Memos - Disciplinary memos issued to an employee are admissible evidence in a grievance and/or arbitration proceeding. However, such disciplinary memoranda, other than those resulting in a suspension or discharge, issued more than two (2) years prior to the incident or events giving rise to said grievance shall not be admissible.

(g)     An arbitration award issued in either expedited or regular arbitration proceedings or a final and binding award rendered in Step Two of the grievance procedure which requires the payment of a specific sum of money shall be paid within thirty (30) days of the date of the award. If payment is not made within said period, interest shall accrue on the sum(s) due from the date of the award at the rate of one percent (1%) per month.

If a calculation is required to determine the specific amount(s) due under the award, the Producer shall calculate such amount(s) and shall notify the other party of the specific sum(s) due within sixty (60) days of the date of the award. If such calculation is not made or if notice is not given as required, interest shall accrue on the sum(s) due from the date of the award at a rate of one percent (1%) per month. If, after calculation, the parties disagree on the sum(s) due, or if the amount(s) due and owing under the award cannot be calculated within the

- 91 -

sixty-day period as a result of factors beyond the control of the Producer, then no interest shall accrue upon the sum(s) due.

## XXXIII. Employee Assistance Program for Drug and Alcohol Abuse

The Producers endorse the concept of the IATSE and Basic Crafts for providing an employee assistance program for drug and alcohol abuse problems. Recognizing that such a program is best administered under the auspices of the Motion Picture Industry Health Plan, the Producers, in conjunction with the IATSE and Basic Crafts, hereby recommend to the Board of Directors of the Motion Picture Industry Health Plan that such an employee assistance program be added to the benefits provided by the Health Plan. The Producers and the Union agree that among the resources to be considered by the Health Fund Directors in implementing this program is the existing program of the Motion Picture and Television Fund, Alcoholics Anonymous and Narcotics Anonymous.

An employee who has an alcohol or drug abuse problem which interferes with job performance or attendance will be disciplined in accordance with normal disciplinary procedures. In such cases, before an employee is discharged or disciplinary action is taken, the Producer will give advance notice to the applicable Local Union and will meet or confer with such Local Union representative. As a part of those procedures or as an alternative thereto, such an employee may be referred to counselling through a qualified employee assistance program. Any employee who refuses to accept treatment through such a program or who is again disciplined or discharged pursuant to this subsection by his/her employer for unsatisfactory job performance or other misconduct arising out of or resulting from drug or alcohol abuse shall not be entitled to have the second or subsequent disciplinary action(s) reviewed pursuant to the grievance and arbitration procedure. Notwithstanding the participation by any employee in an employee assistance program created pursuant to this Agreement, the Producers and the IATSE, its Local Unions and the Basic Crafts recognize that each employee is and remains responsible for his/her own satisfactory job performance.

## XXXIV. Loan-outs

The Producer may utilize the services of an employee on a loan-out basis for work covered by the Basic Agreement, its Supplements and the West Coast Studio Local Agreements (Applicable Agreements) under the following conditions:

- 92 -

Exhibit B, Page 22



**MOTION PICTURE**     **EDITORS GUILD**

SENT VIA U.S. MAIL

October 23, 2009

Daniel Adams
101 Maple Street
West Barnstable, MA 02668

                Re:   Local 700 v. Cape Filmworks, LLC
                     File Number: 2009-0917

Dear Mr. Adams:

It has come to the Guild's attention the company owes wages to Dean Goodhill, editor, and Rick Perkins, assistant editor, for their services on the project "The Lightkeepers". In addition, pension and health contributions are due to the MPIPHP on both of their behalves.

Paragraph 19 of the Local 700 Post Production Independent Agreement requires employees to be paid every Thursday for the services rendered the prior week. The company has failed to meet this obligation. In fact, it is several months behind in paying.

The company owes Dean Goodhill four weeks of pay for the workweeks ending August 22, August 29, September 5 and September 16, 2009. Wages are owed to Rick Perkins in the amount of $4650.00 representing three weeks, the remaining balance of the settlement agreed to between the company and IATSE Representative, Scott Harbinson. In addition, he is owed three weeks of pay for the workweeks ending June 12, September 5 and September 12 and one day of pay for workweek ending June 19, 2009.

That paragraph further states once the employer is notified of such late payment of wages, the employer will issue a payroll check(s) to rectify the problem within three days. We therefore demand that take place and all of the above monies be paid to these two individuals.

The IATSE Basic Agreement requires the appropriate pension, health and IAP contributions be made on behalf of employees working under the scope of that agreement. Both of these individuals were and, therefore, the company is required to comply. The company has failed to

**7715 Sunset Boulevard, Suite 200, Hollywood, CA 90046 • (323) 876-4770 or (800) 705-8700 • Fax (323) 876-0861**
145 Hudson Street, Suite 201, New York, NY 10013 • (212) 302-0700 • Fax (212) 302-1091
6317 N. Northwest Highway, Chicago, IL 60631 • (773) 594-6598 or (888) 594-6734 • Fax (773) 594-6599
Local 700, I.A.T.S.E. & M.P.T.A.A.C. • http://www.editorsguild.com • mail@editorsguild.com

Exhibit C, Page 23

October 23, 2009
Local 700 v. Cape Filmworks, LLC
Page Two

make contributions since June of this year and is therefore delinquent in that respect and as a result has violated, including but not limited to, Articles XII, XIII, XIIIA, XIV of the IATSE Basic Agreement. Benefits will also be necessary in conjunction with the above-referenced dates in which wages are owed.

Therefore, by copy of this letter we are advising Richard Jarrard of Contract Services Administration Trust Fund and Michael Miller of the I.A.T.S.E. that we are hereby invoking Step 1 of the grievance and arbitration procedures.

The remedy again is for the wage payments to be paid in full within three days and the delinquent pension and health contributions be paid to the MPIPHP immediately.

Sincerely,

Catherine A. Repola
Assistant Executive Director

CAR:vl

cc:     Michael Miller, IATSE
        Richard Jarrard, CSATF

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Ronald S. W. Lew and the assigned discovery Magistrate Judge is Patrick J. Walsh.

The case number on all documents filed with the Court should read as follows:

## CV10- 6050 RSWL (PJWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=====================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] Western Division | [ ] Southern Division | [ ] Eastern Division |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

David Adelstein (SBN 105250)/Mar___ Nuncio (SBN 245082)
Bush Gottlieb Singer Lopez K___ ___nski Adelstein &
Dickinson
500 N. Central Avenue, Suite 800
Glendale, CA 91203
(818) 973-3200
(818) 973-3201
dadelstein@bushgottlieb.com/mnuncio@bushgottlieb.com
PLAINTIFFS MOTION PICTURE EDITORS GUILD,
IATSE LOCAL 700

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| MOTION PICTURE EDITORS GUILD, IATSE LOCAL 700 | CASE NUMBER |
|---|---|
| PLAINTIFF(S) | |
| V. | **CV10 6050 -RSW (PJWX)** |
| CAPE FILMWORKS, LLC, a Massachusetts corporation | |
| DEFENDANT(S) | **SUMMONS** |

TO:DEFENDANT(S): <u>CAPE FILMWORKS, LLC, a Massachusetts corporation</u>

A lawsuit has been filed against you.

Within <u>21</u> days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☒ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, <u>David Adelstein</u>, whose address is <u>500 N. Central Avenue, Suite 800, Glendale, CA 91203</u>. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: **1 3 AUG 2010**

By: _____

MARILYN DAVIS
Deputy Clerk

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                    SUMMONS                    American LegalNet, Inc.
                                                            www.USCourtForms.com

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**COPY**

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
MOTION PICTURE EDITORS GUILD, IATSE LOCAL 700

**DEFENDANTS**
CAPE FILMWORKS, LLC, a Massachusetts corporation

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
David Adelstein (SBN 105250)/Marissa Nuncio (SBN245082)
Bush Gottlieb Singer Lopez Kohanski Adelstein & Dickinson
500 N. Central Avenue, Suite 800
Glendale, CA 91203
(818) 973-3200

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff ☒ 3 Federal Question (U.S. Government Not a Party

☐ 2 U.S. Government Defendant ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify): ☐ 6 Multi-District Litigation ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No (Check 'Yes' only if demanded in complaint.)
**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No ☐ **MONEY DEMANDED IN COMPLAINT: $**

**VI. CAUSE OF ACTION** (Cite the U. S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Complaint to compel arbitration of a§301 contract, per 29 USC §185(c)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☒ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 22 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities – Employment | ☐ 630 Liquor Laws | ☐ 61 HIA(1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **IMMIGRATION** | ☐ 446 American with Disabilities – Other | ☐ 640 R.R.& Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW 405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | **FEDERAL TAX SUITS** |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:** Case Number: **CV10 6050**

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

American LegalNet, Inc.
www.FormsWorkflow.com

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☒ No ☐ Yes

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☒ No ☐ Yes

If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Massachusetts |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
     **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date  August 13, 2010

DAVID ADELSTEIN (SBN 105250)

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3 -1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

American LegalNet, Inc.
www.FormsWorkflow.com